UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| BEAD FILTERS INTERNATIONAL, LLC. § <br> and RONALD F. MALONE § <br> § <br> Plaintiffs, § <br> § CIVIL ACTION NO. SA-09-CV-0105-XR <br> VS. § <br> § <br> CHRISTOPHER MILLS and § <br> INTERNATIONAL FILTER § <br> SOLUTIONS, INC. § <br> § <br> Defendants. § | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO STAY PROCEEDING

Plaintiffs BEAD FILTERS INTERNATIONAL, LLC. (BFI) and RONALD F. MALONE (Malone) collectively file this *Plaintiffs' Response to Defendants' Motion to Stay Proceeding* and in support thereof would show unto the Court the following:

**I.    Brief Procedural and Factual Background**

Malone is the owner and inventor of a number of United States Patents including U.S. Patent Numbers 5,232,586 (the '586 Patent), 5,770,080 (the '080 Patent), and 6,517,724 (the '724 Patent) (collectively "Plaintiffs' Patents"). Together with his trade secrets, Plaintiffs' Patents comprise Plaintiffs' Bead Filter Technology.

BFI is the owner of the POLYGEYSER trademark which is registered in the United States Patent and Trademark Office, Reg. No. 3,028,196 and common law rights (collectively the "POLYGEYSER Mark"). BFI is also a licensee from Malone of the Bead Filter Technology.

In 1993, Malone entered into a licensing agreement with Burt Nichols (Nichols) of Water Garden Gems (WGG) (the "1993 Agreement"). The 1993 Agreement granted Nichols an

1

exclusive license in a narrow size slot (1-5 cubic feet) for hourglass filters, the subject of the '586 patent. The patent and technology licensing agreement specifically excluded "drop" filters, the subject matter of the '080 patent and the '724 patent.

At least as early as 2004, Malone and Nichols began negotiating a new patent license and technology license arrangement for the new "drop" or POLYGEYSER technology which is the subject matter of the '080 patent and the '724 patent. Licensing discussions got off to a slow start because the benefits of the emerging technology were still largely unknown and unappreciated. However, Malone and Nichols came to an understanding that any sales of the PolyGeyser technology would be considered "sales of opportunity" and royalties would be paid at the same rate as under the 1993 agreement until a patent and technology licensing agreement governing the PolyGeyser technology could be negotiated or the parties reached impasse

During the negotiation period, Malone suffered a massive heart attack in his backyard on March 15, 2006. Fortunately, Malone made it to the hospital just in time. At the hospital, Malone received two stents and began recovery. However, before patent and technology licensing agreement negotiations could resume, Malone was diagnosed with a subdural hematoma in June 2006 which required two sequential brain operations. As a result, he experienced localized seizures and was put on medication to prevent further seizures as he recovered from surgery.

During the time that Malone was suffering from his various health problems in 2006, Nichols created a partnership with Defendant, Chris Mills ("Mills") and formed Defendant International Filter Solutions, Inc. (IFS). Malone did not know about IFS until after it was created and had few details about the division of rights between Nichols and Mills.

Despite his health problems, Malone met with Nichols and Mills in August 2006 to discuss finalizing a new patent and technology licensing agreement.  Because so much progress had been made between Nichols and Malone before Malone's health problems, Malone assumed that the parties were fairly close to reaching an agreement.  However, the introduction of Mills to the negotiations immediately caused a number of disagreements over details of the patent and technology license which had previously been negotiated.

Many drafts and proposed written license agreements were circulated among Malone, Mills and Nichols in late 2006 and 2007.  Beginning in early 2008 Malone worked in earnest to negotiate a version of the proposed license agreement that he believed would satisfy the concerns of all parties.  In late March 2008, Malone presented another proposed patent and technology licensing agreement to Mills.  Ultimately, Malone was able to convince Mills to talk about the draft while on a plane returning from a business trip on April 16, 2008.

Based on the discussion with Mills, Malone revised the patent and technology licensing agreement to address some of Mill's complaints and concerns.  Malone ultimately e-mailed the June 26, 2008 revised draft patent and technology licensing agreement proposal to IFS in June 2008.  When Malone contacted Mills to discuss the latest patent and technology licensing agreement draft, Mills shouted at Malone prompting Malone to temporarily halt the negotiation in search of a new approach.

On July 10, 2008, Malone was pleased to receive what he believed to be a signed copy of the June 26, 2008 draft patent and technology licensing agreement from IFS.  Upon further review, however, it was discovered that Mills had made major unacceptable alterations to the agreement before signing it.  The counter-proposal was rejected by Malone.

Malone and his attorney again began negotiations with Mills and Nichols, the two principals of IFS in August 2008. Initially, Nichols indicated a willingness to sign the June 26, 2008 version of the patent and technology licensing agreement. However, Mills made it clear that he was not even interested in discussing the proposed license agreement. The parties were represented by attorneys during negotiations.

Meanwhile, in September 2008, Nichols triggered a push-pull agreement to terminate his relationship with Mills in IFS. Under a push-pull agreement, one partner makes a buy-out offer to another partner. The other partner can then either accept the buy-out offer and sell his share of the business or he can decide to buy the business on the same terms which were offered to him. Malone assumed that the triggering of this push-pull agreement would bring the patent and technology licensing agreement negotiations to a head because the value of the business without the license rights to the PolyGeyser filters is likely very low. Regardless, Mills bought Nichols share of the business under the push-pull arrangement before securing a written patent and technology license in the PolyGeyser filters.

Hopeful to reach an agreement, Malone made a number of concessions in negotiating the patent and technology licensing agreement with Mills. Among other things, Malone agreed to lower his requested rate of royalties under the agreement. Unfortunately, Mills refused to sign the license agreement in any form proposed by Malone. Mills essentially demanded unrestricted worldwide rights which could put Malone's patent protection in certain countries at risk. Malone proposed a number of creative solutions during negotiations in an attempt to appease Mills, but in the end the parties reached an impasse.

Once Malone realized that an impasse had been reached, he had a letter terminating negotiations for the Polygeyser Technology sent to Mills and IFS suggesting terms under which

4

to wrap up their business relationship resulting from years of sales of opportunity. Instead of responding to Malone's termination of negotiations letter, Mills filed a lawsuit in Texas state court in Guadalupe County (the "State Action). The State Action essentially asks the state court to impose a patent and technology licensing agreement upon Malone that Mills could not negotiate at the bargaining table.

In January 2009, Mills stopped paying any royalties to Malone. This action effectively terminated any and all agreements that may have existed between Mills or IFS and Malone or BFI, including the 1993 Agreement. Plaintiffs' counsel wrote a letter to Defendants' counsel confirming this fact. Plaintiffs' counsel's letter did not establish or acknowledge any rights or obligations as Defendants seems to suggest. Shortly after Mills stopped paying any and all royalties, Plaintiffs filed the instant suit alleging *inter alia* patent and trademark infringement. Mills has continued to use the Bead Technology including the three U.S. patents and registered U.S. trademark without paying any royalties.

After answering Plaintiffs' Complaint, Defendants filed the instant Motion to Stay the proceedings pending the resolution of the State Action. Defendants' motion reads like a primer on Ninth Circuit precedent and ignores all applicable Fifth Circuit standards. For the reasons outlined below, this case should *not* be stayed pending the resolution of the State Action.

**II.      Arguments and Authorities**

Federal Courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Co. River Water Conservation Dist. v. United States [Colorado River]*, 424 U.S. 800, 817 (1976). Accordingly, Federal Courts are to surrender jurisdiction only where "there exist 'exceptional' circumstances." *Moses H. Cone Memorial Hosp. c. Mercury Constr. Corp. [Cone]*, 460 U.S. 1, 25-26 (1983). No such exceptional circumstances exist in the instant case.

*a) Standard of Review*

In reviewing abstention cases, the Fifth Circuit applies a "two-tiered standard of review." *Nationwide Mut. Ins. Co. v. Unauthorized Practice of LA Comm.*, 283 F.3d 650, 652 (5th Cir. 2002). A district court's decision regarding whether to exercise jurisdiction is reviewed for abuse of discretion. *Bank One, N.A. v. Boyd*, 288 F.3d 181, 183-84 (5th Cir. 2002). However, the district court's underlying legal conclusions are reviewable *de novo*. *Id.* A decision regarding the exercise of jurisdiction is immediately appealable. *Cone*, 460 U.S. at 13.

The United States Supreme Court set forth standards to follow when deciding whether to exercise jurisdiction where there is a pending state action. The threshold question is whether or not the cases are "parallel." *See id.* That is, both the state and federal suits "involve the same parties and the same issues." *Am. Guar. & Liab. Ins. Co. v. Royal Indem. Co.*, 408 F.3d 248, 251 (5th Cir. 2005). Only if that threshold factor is met, does the court weight the six factors put forth in *Cone* with the balance heavily weighted in favor of jurisdiction:  (1) assumption by either court of jurisdiction over a res, (2) relative inconvenience of the forums, (3) avoidance of piecemeal litigation, (4) order in which jurisdiction was obtained, (5) whether state or federal law will be applied, and (6) adequate protection in state court. *Cone* at 16, 20, 23-24.

*b) The State Action and the Instant Case are not Parallel*

To be parallel, the cases must "involve the same parties and the same issues." *Royal Indem.*, 408 F.3d at 251. "If the suits are not parallel, the federal court *must* exercise jurisdiction." *Stewart v. W. Heritage Ins. Co.*, 438 F.3d 488, 491 n.3 (5th Cir. 2006) (emphasis added). In the instant case, neither the parties nor the issues are parallel. Nichols, a defendant in

the State Action, is not a party to the instant case.[1]  *See* Ex. 1 to Defendants' Motion to Stay. Nor could he be made a party to the instant action since he is not infringing the Bead Filter Technology.  Nichols has not been involved with the Plaintiffs or the Defendants for over six months since he sold out completely to Mills.

Moreover, the state case is an action for imposition of an implied contract based on course of dealing.  It does not contain *any* of the claims asserted in the instant case.  Defendants' assertion that "[t]en (10) of the eleven (11) claims asserted [in the instant case] by Plaintiffs . . . could have been made in the previously filed State Action" is meaningless because the claims were *not* made in the state action.  Indeed, even where "the general subject matter of the two actions is the same" and there is a "common issue between them," if the other issues are disparate and the parties are not the same the cases are not parallel.  *Republicbank Dallas NA v. McIntosh*, 828 F.2d 1120, 1121 (5th Cir. 1987), per curium.

The U.S. District Courts have original jurisdiction of all patent cases.  28 U.S.C. §§ 1331, 1338(a). The U.S. Court of Appeals for the Federal Circuit have exclusive jurisdiction of all appeals arising under the patent statutes.  28 U.S.C. §§ 1295. The U.S. District Courts have original jurisdiction of all cases based on U.S. trademark registrations.  35 U.S.C. § 1121. Accordingly, the two actions are not parallel and the district court must exercise jurisdiction.

   c)  *Even if the Actions Were Parallel, the Court Should Exercise Jurisdiction*

The Colorado River abstention doctrine "represents an 'extraordinary and narrow exception' to the 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'"  *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 650 (5th Cir.

---

[1] Although Nichols is named as a defendant in the State Court suit, the petition contains no allegations against him and asserts no causes of action against him.  The only apparent reason that Nichols is named as a party in the State Court suit is to defeat federal jurisdiction.

2000) (*quoting Colorado River,* 424 U.S. at 813, 817).  Accordingly, in weighing the above listed factors, the balance should be weighted heavily in favor of jurisdiction.  *Cone*, 460 U.S. at 16.  As demonstrated below, the factors weigh in favor of jurisdiction.  Defendants' request for a stay should be denied.

    1.  <u>Assumption of Jurisdiction Over a Res</u>

Because neither this court nor the state court have assumed jurisdiction over any res or property, the first factor weights against abstention.  *Black Sea Inv.*, 204 F.3d at 650.  Contrary to Defendants' assertion, this factor is not irrelevant simply because it is not present.  *Id. Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988) ("This is not, however, a merely neutral item, of no weight in the scales.").

    2.  <u>Relative Inconvenience of the Forums</u>

Because both "[t]he federal and state courts are in approximately the same geographic location within the state," this factor weighs against abstention.  *Black Sea Inv.*, 204 F.3d at 650.  Defendants' assertion that this factor favors a stay because they are only a few miles apart is directly contrary to controlling Fifth Circuit precedent.  *Id.*  The factor weighs against abstention.  *Bank One, N.A.*, 288 F.3d at 185.

    3.  <u>Avoidance of Piecemeal Litigation</u>

"The prevention of duplicative litigation is *not* a factor to be considered in an abstention determination."  *Jimco*, 844 F.2d at 1192 (emphasis added).  Rather, the Supreme Court's reference to piecemeal litigation referred to situations where inconsistent rulings may affect property ownership.  *Id.*  Where, as here, the "case does not involve jurisdiction over a res or property, . . . . the avoidance of piecemeal litigation does not weigh in favor of abstention."  *Id.*  Indeed "*any* time duplicative litigation exists, the possibility of inconsistent judgments also

8

exists." *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494, 498 (5th Cir. 2002) (emphasis supplied). However, as the Fifth Circuit has noted on more than one occasion, "[s]hould one court render judgment before the other, *res judicata* will ensure proper order." *Id.* at 499; *Jimco*, 844 F.2d at 1192.

### 4. The Order in Which Jurisdiction was Obtained

The fourth factor which should be considered is the order in which jurisdiction was obtained. While this factor may slightly favor abstention, it is not enough by itself to warrant a refusal to exercise jurisdiction. Indeed, when weighing this factor, courts do not simply determine which suit was filed first. For example, in *Transocean Offshore, USA, Inc. v. Catrette*, 239 Fed. Appx. 9 (5th Cir. 2007) the Fifth Circuit considered the fact that Plaintiffs could not have filed suit prior to the State Action because it was that State Action which triggered the breach of contract which was the subject of the federal suit. *Id.* at *13. Likewise, Plaintiffs in the instant case waited to file suit until after Defendants had stopped paying royalties, effectively terminating any claim they may have had under any theory of contract.[2]

### 5. Whether State or Federal Law Will Be Applied

"[T]he presence of federal law issues must always be a major factor weighing against surrender." *Cone*, 460 U.S. at 26. This case involves federal issues of patent infringement and violation of the Lanham Act governing trademarks. Patent law is an area of exclusive federal jurisdiction and Federal Trademark Law is an area of original Federal Jurisdiction.

Federal law applies to the withholding of royalties by Defendants and permits Plaintiffs to terminate any license that existed. *Cordis Corporation v. Medtronic, Inc.,* 780 F.2d 991, 995

---

[2] Since a patent license is merely a covenant not to sue, any breach of or rescission of a patent license makes the former licensee open to suit for patent infringement if they continue to use or manufacture the patented technology. *See Transcore, LP v. Elec. Transaction Consultants Corp.* 2009 U.S. App. LEXIS 7428 *at *9-*11* (Fed. Cir. Apr. 9, 2009).

(Fed. Cir. 1985). "If [licensees] wish to continue to invoke the protections of their licensing agreements, they should be required to continue paying their royalties to the [licensor]." *Id.* Indeed, "[i]t would not be fair for [a licensee] to be allowed simultaneously to reap all the benefits of the licensing agreement and to deprive the licensor of all his royalties." *Id. See also* ERENEST BAINBRIDGE LIPSCOMB III, LIPSCOMB'S WALKER ON PATENTS, *Licenses* § 20:30, p. 121 (3d ed. 1987)(even where a licensee challenges the validity of a patent, he must still pay royalties to retain the license).

Accordingly, the fifth factor weighs heavily in favor of jurisdiction.

6. Adequacy of State Proceedings

The State Action is inadequate to address Plaintiffs' claims. First, Plaintiffs' claims have not been asserted in the State Action. Secondly, the State Court is not equipped to address the salient issues of federal patent and trademark infringement. If this case were stayed, Plaintiffs would not have an adequate remedy in the State Action.

> d) The Court Should not Consider the Conflicting Non-Mandatory and Pre-Colorado River Authority Cited by Defendants

Defendants' motion cites to numerous authorities which were either superseded by *Colorado River* or conflict with Fifth Circuit cases on point. Despite numerous Fifth Circuit cases relating to abstention, Defendants motion cited exclusively to law outside the Fifth Circuit. Additionally, Defendants' motion appears to suggest impropriety by the Plaintiffs in filing this suit. However, there is "nothing vexations . . . in [proper] resort to the federal courts." *Bank One*, 288 F.3d at 186. Accordingly, Defendants' citations to non-mandatory authority and considerations regarding alleged "forum shopping" should be given no weight.

### III. Conclusion and Prayer

Following the standards set forth by the United States Supreme Court in *Colorado River* and *Cone*, this court must exercise jurisdiction in this matter. Accordingly, Plaintiffs pray that the Court DENY Defendants' motion in full and proceed with the instant case on the merits.

Dated: April 23, 2009

                                                  Respectfully Submitted,

                                                  **HANOR, LIVELY & CERNYAR, P.L.L.C.**

                                                  750 Rittiman Road
                                                  San Antonio, Texas 78209
                                                  Phone: (210) 829-2003
                                                  Fax: (210) 829-2001
                                                  Email: rlively@hanor.com



By: _____
        **REBECCA K. LIVELY**

**ATTORNEYS FOR PLAINTIFFS, BEAD FILTERS INTERNATIONAL, INC. AND RONALD F. MALONE**

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 23, 2009 the foregoing instrument was electronically filed via ECF which will give notice to the following:

Sam D. Millsap, Jr.
LAW OFFICES OF SAM D. MILLSAP, JR.
10999 IH-10 West, Suite 800
San Antonio, Texas 78230
Fax: (210) 341-1854

By: _____
         Rebecca K. Lively

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **BEAD FILTERS INTERNATIONAL, LLC.** and **RONALD F. MALONE** | § § § | |
| **Plaintiffs,** | § § | **CIVIL ACTION NO. SA-09-CV-0105-XR** |
| VS. | § § | |
| **CHRISTOPHER MILLS and INTERNATIONAL FILTER SOLUTIONS, INC.** | § § § § | |
| **Defendants.** | § | |

## ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDING

The Court, having given full consideration to Plaintiff's Motion to Stay Proceeding and Defendant's Response thereto, hereby DENIES Plaintiff's Motion.

SO ORDERED, this _____ day of _____, 2009.

_____
Hon. Xavier Rodriguez
United States District Judge

13